**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

---

| | | |
|---|---|---|
| **FOSTER A. JONES, III,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 09-2029-STA** |
| | ) | |
| **FIRST HORIZON NATIONAL** | ) | |
| **CORPORATION** | ) | |
| | ) | |
| **Defendant.** | ) | |

---

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

---

Before the Court is Defendant's Motion for Summary Judgment (D.E. # 13) on December 30, 2009. Plaintiff has responded in opposition to Defendant's Motion. For the reasons set forth below, the Motion is **GRANTED**.

## BACKGROUND

Plaintiff has alleged that Defendant terminated his employment in violation of the Age Discrimination in Employment Act ("ADEA"). The following facts are not in dispute for purposes of this Motion unless otherwise noted. Immediately prior to being laid off by First Horizon, Plaintiff worked for Defendant in the position of Enterprise Technician IV in the Shared Services Division of First Horizon's Enterprise Technology Department. (Statement of Facts ¶ 1). According to Defendant, Plaintiff worked as a Project Manager in the moves, adds, and changes ("MACs") group, where he managed technology issues involved in opening and moving bank branches of First Horizon. (*Id*. ¶ 2.) Plaintiff contends that he was also involved in

1

opening, moving, and closing both banks and mortgage companies, and approximately ninety-five percent of the projects he managed in 2006 and 2007 were for mortgage companies.

Beginning in mid-2006, Defendant went into a cost-reduction mode, which included examining possible areas to consolidate and reviewing the possibility of outsourcing functions. (*Id*. ¶ 3.)  As part of this cost-reduction process, the Shared Services Division outsourced approximately 80 percent of its employees.  (*Id*. ¶ 4.)  This process began in approximately July 2006 and was finalized in approximately May 2007.  (*Id*.)  This was accomplished by contracting with a third-party to perform many of the functions performed by persons who had previously been employed as employees in the Shared Services Division. (*Id*.)  Prior to his layoff, Plaintiff reported directly to Cedric Williams ("Williams"), and Williams reported to Joseph Sanders ("Sanders") who was the Executive Vice-President of the Shared Services Division of First Horizon's Enterprise Technology Department.  (*Id*. ¶ 6.)  Around the time that this outsourcing was being finalized, Sanders was instructed that he would have to eliminate additional positions in the Shared Services Division.  (*Id*. ¶ 5.)

The other Project Managers in the MACs group who reported to Williams and Sanders at the time Plaintiff was selected for termination were John Rarick, Deanna Johns, Margaret Watkins, and Carla Chiemeka.  (*Id*. ¶ 7.)  Plaintiff argues that he was selected for termination in June or July of 2007, and yet Ms. Chiemeka did not start working in the MACs group until sometime in August 2007.  As a result, she could not have reported to Williams and Sanders when Plaintiff was selected for termination.  Deanna Johns, Margaret Watkins, and Carla Chiemeka worked in Dallas, and John Rarick and Plaintiff worked in Memphis.  In 2007, Rarick was age 53 and Plaintiff was 57.  (*Id*. ¶ 8.)  Defendant's Mortgage Division operations were

based in Dallas; Defendant's Banking operations were based in Memphis. (*Id*. ¶ 9.)  Thus, the MACs employees working in Dallas had to have expertise in mortgage systems, while the MACs employees working in Memphis needed expertise in the banking portion of First Horizon's business.  (*Id*.)  According to Plaintiff, however, MACs Project Managers were organized by region, not the distinction between banks and mortgage companies.  MACs project managers in Memphis worked with mortgage companies.

Several months before Plaintiff's layoff, Chris Henderson ("Henderson") had also been employed as a Project Manager in the MACs group based in Memphis.  (*Id*. ¶ 10.)  Henderson's employment was terminated in early 2007, and this position was moved from Memphis to Dallas in order to accommodate a need for more staffing related to First Horizon's mortgage division. Plaintiff argues that the position itself was still considered as being based in Memphis on October 1, 2007.  Following Henderson's termination, Carla Chiemeka was selected to fill the open Project Manager position in the MACs group.  (*Id*. ¶ 11.[1])  Chiemeka was already a First Horizon employee working at the Mortgage Division headquarters in Dallas. (*Id*.)  Chiemeka filled the open position prior to August 2007.  (*Id*. ¶ 12.)  Chiemeka would have begun working in the MACs Project Manager position months earlier, but she was needed to conclude a project she had been working on in her previous job at First Horizon. (*Id*. ¶ 13.)

As a result of the requirement that he eliminate additional positions in the Shared Services Division, Sanders made the decision to eliminate the Project Manager position held by Plaintiff.  (*Id*. ¶ 14.)  In making this decision, Sanders considered the backgrounds and skills sets

---

[1] Plaintiff objects that this statement implies a short passage of time between Henderson's termination and Chiemeka's selection when there is no evidence in the record to support this inference.

of all of his Project Managers. (*Id.* ¶ 15.[2]) Because First Horizon was reversing its national banking strategy, fewer people with a banking background were needed. (*Id.* ¶ 16.) This factor influenced Sanders's decision that one of the MACs Project Manager positions in Memphis should be eliminated rather than a Project Manager working with the mortgage operations in Dallas. (*Id.*) Plaintiff admits that this was Sanders's testimony during his deposition; however, the testimony is at odds with the fact that ninety-five percent of Plaintiff's projects were in the mortgage area. Sanders also took into account the fact that Plaintiff's salary was higher than Rarick's salary, and that Plaintiff did not have the same technical expertise as Rarick. (*Id.* ¶ 17.) Plaintiff contends that Sanders was charged with reducing headcount and not payroll.

Another consideration in Sanders' decision to eliminate Plaintiff's position during the reduction in force was that Plaintiff did not have the Project Manager ("PMP") certification. (*Id.* ¶ 18.) Plaintiff and other Project Managers working under Sanders had been encouraged to obtain this certification, and Sanders had funded a training class for the certification that Plaintiff had been encouraged to attend. (*Id.*) New employees within the Project Manager positions in the Shared Services Division were required to have this certification, and all of the MACs Project Managers in Dallas had the PMP certification. (*Id.*)

After Plaintiff was laid off, his duties were assumed by the other Project Managers in the MACs group, including Chiemeka. Plaintiff argues that Chiemeka actually took over seven of the nine states in Plaintiff's territory.

In its Motion for Summary Judgment, Defendant argues that Plaintiff cannot make out his

---

[2] While admitting this fact for purposes of the Motion, Plaintiff adds that Sanders did not consider performance ratings or any other documents but rather his personal knowledge of the employees.

prima facie case of age discrimination under the disparate treatment theory. More specifically, Defendant contends that Plaintiff's termination was purely a result of Defendant's decision to reduce its workforce. No one was hired to replace Plaintiff, and other employees assumed the duties that had been his. Chiemeka, the younger employee whom Plaintiff alleges replaced him, was a Project Manager like Plaintiff prior to his termination. According to Defendant, although Chiemeka was introduced to the group on August 13, 2007, she had been working in the group prior to that date. Defendant argues that Chiemeka had been chosen some time before that but had stayed on in another group to complete a project before becoming a Project Manager in the MACs group. Therefore, this is a reduction in force case.

Plaintiff has failed to present any evidence that the workforce reduction decision was related in any way to his age. Even if Plaintiff could make this showing, Defendant had a legitimate, nondiscriminatory reason for the layoff, and Plaintiff cannot establish that Defendant's reason was pretext for discrimination. Defendant contends that Plaintiff was paid at higher salary than other Project Managers in Memphis and yet did not possess the same technical qualifications. Therefore, Defendant is entitled to summary judgment on Plaintiff's ADEA claim.

In his response, Plaintiff first argues that there is a factual dispute about whether Chiemeka replaced Plaintiff including whether Chiemeka was even a Project Manager prior to Plaintiff's termination or whether Chiemeka had filled the position left vacant after Henderson's termination. Defendant cannot establish when Chiemeka was promoted to Project Manager, only that the decision to promote her was made some months before Plaintiff's termination. According to Plaintiff, it is arguable whether Chiemeka assumed her duties as Project Manager

prior to his termination date.  Defendant informed Plaintiff of his termination on August 13,

2007, the same day Chiemeka was introduced in a MACs department teleconference.  Plaintiff

also contends that he was targeted for termination in June or July of 2007.  As for his prima facie

case of age discrimination, Plaintiff argues that he can demonstrate that he was replaced by a

younger employee and that his age was a factor in his termination.  Plaintiff states that his job

duties were reassigned to other younger employees.  As Project Manager, Chiemeka assumed

responsibility for seven of the nine territories which had been assigned to Plaintiff.  Plaintiff cites

age-related comments made to him about his plans to retire.  At the same time Plaintiff was

terminated, Defendant also terminated three or four other employees in the Shared Services

Division who were over the age of 50.  Plaintiff argues that Sanders failed to use an objective

criteria in determining who to terminate and instead relied on his own judgment.  Plaintiff also

cites Defendant's inconsistent explanations for his termination.

Finally, Plaintiff argues all of the proffered reasons for Plaintiff's termination are

pretextual because they have no basis in fact.  Defendant states that it needed managers with

mortgage expertise, and yet Plaintiff has averred that 95 percent of his projects involved

mortgage institutions.  Plaintiff's lack of certification was likewise irrelevant because it was not a

requirement for Plaintiff's position, and no one had ever told Plaintiff that he should pursue it.

Nor should Plaintiff's salary have been relevant to the decision to terminate him because the

primary consideration was to reduce the number of employees, not eliminate salary.  Therefore,

Plaintiff asks the Court to deny summary judgment.

Defendant has filed a reply brief in support of its Motion for Summary Judgment.

Concerning the evidence in the record before the Court, Defendant contends that Plaintiff does

not dispute that his division in the company was going through downsizing at the time of
Plaintiff's termination and that Plaintiff's job was eliminated as part of the reduction in force.
Defendant concedes for purposes of the Motion that Chimieka had not yet assumed duties as a
Project Manager in the MACs Group at the time the decision was made to eliminate Plaintiff's
position.  However, Defendant also cites evidence, including Plaintiff's deposition testimony,
that Chimieka was selected to fill the position formerly held by Chris Henderson, and not
Plaintiff's position.  As for Plaintiff's prima facie case, Defendant asserts that Plaintiff has failed
to show that age was the "but for" factor in his termination.  Defendant also argues that
Plaintiff's "mini-RIF" theory that he was constructively replaced by Chimieka has never been
adopted in this Circuit.  Even if that were not the case, Plaintiff has admitted that Chimieka did
not assume all of his job duties.

Defendant goes on to argue that Plaintiff has failed to adduce any additional evidence that
age was the motivating factor in Defendant's decision to eliminate his position.  The alleged
comments made about Plaintiff's plans to retire are not age-based because age and years of
service are distinct concepts.  The fact that the RIF in this case included other employees over 50
years of age is also irrelevant because Plaintiff has not adduced any evidence about the total ages
of the employees in his division of the company.  Nor can Plaintiff show that Sanders, the
decision-maker who elected to eliminate Plaintiff's position, has offered multiple or inconsistent
explanations for his decision.  The fact that Sanders relied on his own appraisals of the
employees reporting to him does not support Plaintiff's allegation that age was a factor in
Sanders' decision.  For these reasons, Defendant argues that Plaintiff cannot make out his prima
facie case.

7

Even if Plaintiff could adduce evidence of age discrimination, Defendant contends that Plaintiff cannot show that Defendant's legitimate reasons for eliminating his position are pretext. Although Plaintiff has suggested that no one factor standing alone would explain his termination, Defendant counters that Sanders based his decision on all of those factors taken together. Defendant admits that Plaintiff has responsibility for both banking and mortgage projects but states that the division's need for individuals with more mortgage experience weighed against Plaintiff. Defendant also grants that Plaintiff's lack of PMP certification would not have been a factor in his keeping his job; however, when management made the decision to reduce the size of the division, Sanders considered this factor relevant in determining whose position was to be eliminated. Plaintiff's higher salary was also a proper factor to consider. Plaintiff's argument that Sanders was tasked with reducing headcount and not salary fails to recognize that headcount and salary are intertwined factors in cutting costs. When considered as a whole, Plaintiff has failed to show that Defendant's proffered reasons were pretext for discrimination on the basis of Plaintiff's age.

## **STANDARD OF REVIEW**

Federal Rule of Civil Procedure 56(c) provides that a

judgment . . . shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.[3]

In reviewing a motion for summary judgment, the evidence must be viewed in the light most

_____

[3] Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Canderm Pharmacal, Ltd. v. Elder Pharms, Inc.*, 862 F.2d 597, 601 (6th Cir. 1988).

favorable to the nonmoving party.[4]  When the motion is supported by documentary proof such as depositions and affidavits, the nonmoving party may not rest on his pleadings but, rather, must present some "specific facts showing that there is a genuine issue for trial."[5]  It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts."[6]  These facts must be more than a scintilla of evidence and must meet the standard of whether a reasonable juror could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict.[7]  When determining if summary judgment is appropriate, the Court should ask "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-side that one party must prevail as a matter of law."[8]

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[9]  In this Circuit, "this requires the nonmoving party to 'put up or shut up' [on] the critical issues of [her] asserted causes of action."[10]  Finally, the "judge may not make credibility determinations or weigh the evidence."[11]  Under Federal Rule of

---

[4] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

[5] *Celotex*, 477 U.S. at 324.

[6] *Matsushita*, 475 U.S. at 586.

[7] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

[8] *Id*. at 251-52 (1989).

[9] *Celotex*, 477 U.S. at 322.

[10] *Lord v. Saratoga Capital, Inc.*, 920 F. Supp. 840, 847 (W.D. Tenn. 1995) (citing *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1989)).

[11] *Adams v. Metiva*, 31 F.3d 375, 379 (6th Cir. 1994).

Civil Procedure 56(c), summary judgment is proper "if . . . there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law."[12]

## ANALYSIS

The ADEA makes it unlawful for an employer to fail or refuse to hire, discharge, or discriminate "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age. . . ."[13]  A plaintiff may establish a violation of the ADEA by either direct or circumstantial evidence.[14]  Whether a plaintiff proffers direct or indirect evidence, the burden of persuasion remains on an ADEA plaintiff to show "that age was the 'but-for' cause of the[] employer's adverse action."[15]

To establish a prima facie case of age discrimination under the ADEA, Plaintiff must make a the following showings: (1) that he is between 40 and 65 years old; (2) that he was qualified for his particular position; (3) that he was subjected to an adverse employment action; and (4) that he was replaced by someone outside of the protected class.[16]  In the case of a termination resulting from an employer's reduction in force, an ADEA plaintiff must make a slightly different and heightened showing as to the fourth element: the plaintiff must provide "additional direct, circumstantial, or statistical evidence tending to indicate that the employer

---

[12] Fed. R. Civ. P. 56(c); *see also Celotex*, 477 U.S. at 322 (1986).

[13] 29 U.S.C. § 623(a)(1).

[14] *See Martin v. Toledo Cardiology Consultants, Inc.,* 548 F.3d 405, 410 (6th Cir. 2008).

[15] *Gross v. FBL Financial Services, Inc.,* 129 S.Ct. 2343, 2351 n. 4, 174 L.Ed.2d 119 (2009).  *See also Geiger v. Tower Automotive*, 579 F.3d 614, 620 (6th Cir. 2009).

[16] *Geiger*, 579 F.3d at 623.

singled out the plaintiff for discharge for impermissible reasons."[17]

## I.      Reduction in Force

As an initial matter, the Court finds that Plaintiff's arguments to the contrary, this is a reduction in force case.  "A work force reduction situation occurs when business considerations cause an employer to eliminate one or more positions within the company.  An employee is not eliminated as part of a work force reduction when he or she is replaced after his or her discharge."[18] A person is considered replaced "only when another employee is hired or reassigned to perform the plaintiff's duties."[19]  A person is not considered replaced when his duties are absorbed by another person "or when the work is redistributed among other existing employees already performing related work."[20]

Based on the record before the Court, Plaintiff cannot prove that a younger employee Carla Chiemeka replaced him.  In this case it is undisputed that Defendant terminated another MACs Project Manager's employment in 2007, Chris Henderson.  Henderson's termination was unrelated to Defendant's reduction in force plan.  Plaintiff admitted in his deposition that Chiemeka was promoted internally to fill Henderson's position some time before Plaintiff was actually terminated.[21]  Following the elimination of Plaintiff's position, Chiemeka assumed the

---

[17] *Id.* (citing *Barnes v. GenCorp,* 896 F.2d 1457, 1465 (6th Cir.1990)).

[18] *Geiger*, 579 F.3d at 623.

[19] *Id.*

[20] *Id.*

[21] Jones Depo. 183:8-186:8.

majority of Plaintiff's responsibilities as well.[22]  Another employee also absorbed some of

Plaintiff's duties.  Plaintiff emphasizes that Chiemeka did not actually begin her new position as

a Project Manager until after the decision was made to terminate Plaintiff.  The Court finds that

this fact is irrelevant to determining whether Chiemeka replaced Plaintiff for purposes of this

Motion.  While it is not clear when Chiemeka assumed her new role, it is undisputed that she

filled Henderson's position, not Plaintiff's, and then absorbed many but not all of Plaintiff's

duties as a MACs Project Manager.  Therefore, the Court finds that Chiemeka did not replace

Plaintiff but was hired to perform Henderson's duties and took on some of Plaintiff's duties.

Accordingly, Plaintiff's is a reduction in force case.

Plaintiff argues that the Court should employ the Seventh Circuit's "mini-RIF" analysis in

this case because his was the only MACs Project Manager position eliminated.  According to

Seventh Circuit jurisprudence, a mini-RIF occurs when an ADEA plaintiff is the only employee

terminated and his duties are absorbed by other employees outside of the protected class.[23]

Accordingly, a plaintiff need only show that he was "constructively replaced" by younger

employees in order to make out the fourth prong of his prima facie case.[24]  The Court declines to

adopt the Seventh Circuit's approach in this case.  It appears to the Court that the mini-RIF rule

has never been adopted in the Sixth Circuit or by any other Circuit Court of Appeals.

---

[22] *Id.* at 187:22-188:9.

[23] *E.g. Merillat v. Metal Spinners, Inc.*, 470 F.3d 685 (7th Cir. 2006) (applying the "mini-RIF test" where the plaintiff's job duties were absorbed rather than eliminated).

[24] *Ritter v. Hill 'N Dale Farm, Inc.*, 231 F.3d 1039 (7th Cir. 2000) (describing case where the ADEA plaintiff was only employee terminated as "mini-RIF" or "fungibility situation" because the plaintiff was "constructively replaced" by younger workers).

Furthermore, the Sixth Circuit has held that a reduction in force may occur where an employer eliminates only one position, which is at odds with the Seventh Circuit's mini-RIF approach. For these reasons, the Court rejects Plaintiff's invitation to apply the Seventh Circuit's mini-RIF analysis.

## II. Plaintiff's Prima Facie Case

Turning to Plaintiff's prima facie case, the parties do not dispute that Plaintiff can make out the first three elements of his claim. Plaintiff was over age 40 at the time of his termination; Plaintiff was qualified for his position as a MACs Project Manager; and Plaintiff's employment with Defendant was terminated. However, the parties disagree over whether Plaintiff has adduced evidence from which a reasonable juror can conclude that Defendant singled out Plaintiff for discharge for some impermissible reason related to his age. A plaintiff can satisfy this fourth element in a variety of ways, for example, by demonstrating that a "comparable non-protected person was treated better."[25] Furthermore, evidence in support of the fourth element of Plaintiff's case may be either direct, circumstantial, or statistical. Plaintiff argues that he can present the following additional evidence that Defendant based its decision on Plaintiff's age: prior to the RIF, Sanders made comments to Plaintiff about Plaintiff's plans to retire; the three other employees in Plaintiff's division terminated as a result of the RIF were also over age 50; Sanders did not use an objective set of criteria in deciding which position to eliminate; and Defendant has given Plaintiff different reasons over time for its decision to eliminate his position.

---

[25] *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 350 (6th Cir. 1998) (citing *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582-83 (6th Cir.1992)).

The Court holds that Plaintiff has failed to proffer sufficient evidence to make out the fourth element of his prima facie case.  Plaintiff has not adduced any direct evidence that Defendant singled him out for termination on the basis of his age.  "Direct evidence is evidence that proves the existence of a fact without requiring any inferences."[26]  More specifically, direct evidence of discrimination is "evidence of conduct or statements by persons involved in making the employment decision directly manifesting a discriminatory attitude, of a sufficient quantum and gravity that would allow the factfinder to conclude that attitude more likely than not was a motivating factor in the employment decision."[27]  The Sixth Circuit has explained that a comment, for example, that an employee should "retire and make everybody happy" does not constitute direct evidence of age discrimination.[28]  None of the evidence Plaintiff has proffered in support of the fourth prong, including Sanders' inquiry about Plaintiff's retirement plans, constitutes direct evidence.

Plaintiff has produced what may properly be called circumstantial and statistical evidence.  Nevertheless, the Court finds that none of Plaintiff's additional evidence is sufficient to make out the fourth element of prima facie case.

### A.  The Retirement Conversation with Sanders

First, Plaintiff relies on the Sanders' conversation about Plaintiff's retirement plans.

---

[26] *Minadeo v. ICI Paints*, 398 F.3d 751, 763 (6th Cir. 2005) (quoting *Rowan v. Lockheed Martin Energy Sys.,* 360 F.3d 544, 548 (6th Cir. 2004)).

[27] *Scott v. Potter*, 182 F. App'x 521, 525-26 (6th Cir. 2006) (citations omitted).

[28] *Scott*, 182 F. App'x at 526 (reasoning that "years of service" is "conceptually distinct" from age).

Plaintiff has testified that Sanders came to his cubicle and started a conversation with him about

his plans to retire.  Plaintiff stated that this conversation occurred just weeks prior to Plaintiff

receiving notice of his termination.  The Sixth Circuit has adopted the following factors to

evaluate statements allegedly showing an employer's age bias: (1) whether the statements were

made by a decision-maker or by an agent within the scope of his employment; (2) whether the

statements were related to the decision-making process; (3) whether the statements were more

than merely vague, ambiguous or isolated remarks; and (4) whether they were made proximate in

time to the act of termination.[29]  "None of these factors is individually dispositive of age

discrimination, but rather, they must be evaluated as a whole, taking all of the circumstances into

account."[30]

Although Plaintiff does not brief the applicable factors or any relevant case law, the Court

finds that viewing the evidence in the light most favorable to Plaintiff, Sanders' statement does

not evidence that Plaintiff's age motivated the decision to eliminate his position.  The first and

fourth factor clearly weigh in Plaintiff's favor: Sanders was the decision-maker who elected to

eliminate Plaintiff's position and Sanders made the statement only two or three weeks prior to

notifying Plaintiff of his termination.[31]  However, nothing in Sanders' comment related to the

decision-making process for the reduction in force.  Sanders inquired about Plaintiff's plans to

retire and whether Plaintiff's wife was ready to retire and stated in parting that if he was as rich

---

[29] *Skelton v. Sara Lee Corp.*, 249 F. App'x 450, 455 (6th Cir. 2007) (citing *Peters v. Lincoln Elec. Co.,* 285 F.3d 456, 477-78 (6th Cir. 2002)).

[30] *Peters*, 285 F.3d at 478.

[31] Jones Depo. 169:2-29 ("a couple of weeks before – probably early in August, late July or early in August, Joe Sanders came to my cubicle first thing one morning. . . .").

as Plaintiff, he would be walking out the door.  Sanders never mentioned that he was forced to eliminate a MACs Project Manager position, that he was evaluating the MACs Project Managers to determine whose position should be eliminated, or that he had already made a choice about who was going to lose their job.  While it is undisputed that Sanders had this conversation with Plaintiff just prior to eliminating Plaintiff's position, nothing in his comments to Plaintiff suggests that Plaintiff was being eliminated because of his age or that Sanders harbored any discriminatory animus on the basis of age towards Plaintiff.  For the same reasons, it cannot be said that Sanders' comments were more than merely vague, ambiguous or isolated remarks. Sanders never referred to age generally, to Plaintiff's age specifically, or how Plaintiff's age affected his ability to perform his job duties.  Rather the comments were addressed to Plaintiff's plans for retirement.  Weighing the balance of these factors and considering the totality of the circumstances, the Court holds that Sanders' comments do not constitute additional evidence of age bias.  As a result, Plaintiff has failed to establish the fourth element of his prima facie case with this evidence.

    This result is consistent with other Sixth Circuit decisions evaluating how an employer's comments about retirement might be evidence of unlawful discrimination in a variety of situations.  As a general matter, an employer is not always barred from mentioning retirement to an employee.[32]  For example, the Sixth Circuit has concluded that a supervisor's suggestion that

---

    [32] *Rowan*, 360 F.3d at 549 (comments about average age of workers in uranium enrichment plant concerned effects of retirement of high-skilled, key employees on nuclear power industry generally, not evidence of age discrimination).

an employee take early retirement for health reasons was not evidence of age discrimination.[33]   In another case, an employee's testimony that his supervisor urged the plaintiff to take a voluntary early retirement package and "get out while the getting is good" did not constitute evidence of discriminatory intent.[34]   In yet another case, partners in a law firm suggested to another attorney that he consider retirement prior to the attorney being suspended and then terminated from the firm for other causes.[35]   The Sixth Circuit held that the act of urging retirement without some additional reference to age as a reason for the suspension or the termination was "not alone sufficiently indicative of discrimination."[36]   Likewise, a supervisor's general statement that he hoped all older employees would take advantage of an early retirement incentive program was not evidence of discrimination "[a]bsent testimony that. . . [the supervisor] took active steps to push [the ADEA plaintiff] toward retirement based on an improper discriminatory motive."[37]   In each of these instances, the Sixth Circuit concluded that an employer's statements about early retirement generally or for any reason unrelated or without reference to age were not improper. The Court finds that the facts of the case at bar are most akin to the circumstances presented in these cases.

---

[33] *Grubb v. W.A. Foote Memorial Hosp., Inc.*, 741 F.2d 1486 (6th Cir.1984), *vacated on other grounds,* 759 F.2d 546 (6th Cir.), *cert. denied,* 474 U.S. 946, 106 S.Ct. 342, 88 L.Ed.2d 289 (1985).

[34] *Gatch v. Milacron, Inc.*, 111 F. App'x 785, 788 n. 1 (6th Cir. 2004).

[35] *Barnhart v. Pickrel, Schaeffer & Ebeling Co., L.P.A.*, 12 F.3d 1382, 1394-95 (6th Cir. 1993).

[36] *Id.*

[37] *Wilson v. Firestone Tire & Rubber Co.*, 932 F.2d 510, 514 (6th Cir. 1991).

At the same time, in other scenarios where an employer raises the subject of retirement with an employee, the Sixth Circuit has sent mixed signals, for example, in cases where an employer refers to an employee's age when discussing retirement with the employee.  In one case, the Sixth Circuit commented in *dicta* that a supervisor urging an employee to consider retirement simply because of her age could be "strong evidence of an illegitimate motive."[38]  In another instance, however, the Sixth Circuit found that "potentially age sensitive" comments, such as a supervisor asking the ADEA plaintiff about his retirement plans, stating "why don't you retire, old man?," referring to the plaintiff as a dinosaur, and three times in one day saying "why don't you just die?," were insufficient to make out a prima facie case of age discrimination.[39]  Nevertheless, these cases are inapposite here because it is undisputed that Sanders never raised the matter of Plaintiff's age during their conversation about retirement.

Additionally, the Sixth Circuit has reached differing results in cases where an employer took into account an employee's age and ability to retire in deciding to terminate the employee. In one instance, a supervisor stated that another employee (not the ADEA plaintiff) targeted for a reduction in force was "old enough to retire and she will be taken care of so don't worry about it."[40]  The Sixth Circuit concluded that the supervisor's statement was "isolated and ambiguous" and "not at all suggestive of animus" towards older workers generally.[41]  Clearly, there is no

---

[38] *Danielson v. City of Lorain*, 938 F.2d 681, 684-85 (6th Cir. 1991) (assuming *arguendo* that the plaintiff had made out a prima facie case but holding that the plaintiff could not prove pretext).

[39] *Welker v. Goodyear Tire Co.*, 117 F.3d 1421, at * 1-3 (Table) (6th Cir. 1997).

[40] *Greene v. St. Elizabeth Hosp. Med. Ctr.*, 134 F.3d 371, at *3 (Table) (6th Cir. 1998).

[41] *Id*.

evidence of any such statement by Sanders in this case. In another case, where a supervisor had a conversation with an employee about retirement and formed the belief that the employee was so close to retirement that he did not mind being terminated, the Sixth Circuit concluded that the supervisor's opinion was evidence that the employee's age may have been a factor in his termination.[42] The Court finds that case distinguishable from the case at bar as well. Plaintiff testified that during his conversation with Sanders about retirement, Plaintiff made it clear that he was not ready to retire. For these reasons, the Court concludes that these decisions are not dispositive in this case.

Because the Sander's conversation does not suggest that Plaintiff was singled out for termination on the basis of his age, the Court holds that this evidence does not support the fourth element of Plaintiff's prima facie case.

**B.      Ages of Other Employees Terminated in the RIF**

Second, Plaintiff has produced evidence that the three other employees in Plaintiff's division terminated as a result of the RIF were over age 50 like Plaintiff. Plaintiff argues that this fact is further evidence of Defendant's discriminatory intent in eliminating Plaintiff's position. The Court cannot agree. As circumstantial evidence, an ADEA plaintiff in a RIF case may satisfy the fourth element by showing a pattern of laying off only older employees.[43] The Court finds that Plaintiff's proffered evidence that three other employees lost their jobs during Defendant's reduction in force does not constitute a pattern. Therefore, the fact fails as additional circumstantial evidence of discriminatory motive. The terminations also fail as

---

[42] *Hawley v. Dresser Indus., Inc.*, 958 F.2d 720, 723 (6th Cir. 1992).

[43] *Cichewicz v. UNOVA Indus. Auto. Sys., Inc.*, 92 F. App'x 215, 222 (6th Cir. 2004).

statistical evidence of improper motive.  The Sixth Circuit has held that small statistical samples are not "probative of discrimination."[44]  In this case Plaintiff has adduced proof of four employees including himself as a statistical sample, a pool much smaller than other samples the Sixth Circuit has rejected as inadequate in prior cases.  Therefore, the Court holds that this evidence does not satisfy Plaintiff's burden to prove the fourth element of his prima facie case.

## C.    *Failure to Use Objective Criteria*

Third, Plaintiff has argued that Sanders' failure to employ an objective set of criteria in evaluating the MACs Project Managers is further evidence of discriminatory intent.  The Sixth Circuit has recently ruled that an employer's failure to follow objective evaluation criteria set out in its handbook is not additional evidence that the employer discriminated against a protected employee on the basis of age.[45]  In that case, the Court found that the decision-maker, while ignorant of the company's objective criteria, did employ a set of criteria in determining which position to eliminate, and that "[a]bsent some countervailing evidence, this is insufficient to establish the fourth element of the *prima facie* case."[46]  Here Plaintiff has proved even less than the ADEA plaintiff in *Schoonmaker*.  Plaintiff has not adduced evidence that Defendant had an objective set of criteria that Sanders ignored.  Instead, Plaintiff has alleged that the following is evidence of discriminatory intent: (1) Sanders considered all of the MACs Project Managers as

---

[44] *Schoonmaker v. Spartan Graphics Leasing, LLC*, 595 F.3d 261, 267-68 (6th Cir. 2010). *See also Wilson v. Wells Aluminum Corp.*, 1997 WL 52921, at *5 (6th Cir. Feb. 7, 1997) (finding seven employees inadequate as a statistical sample in a reduction in work force case); *Black v. City of Akron,* 831 F.2d 131, 134 (6th Cir.1987); *Simpson v. Midland-Ross Corp.,* 823 F.2d 937, 943 & n. 7 (6th Cir.1987) (finding seventeen employees inadequate).

[45] *Schoonmaker*, 595 F.3d at 268.

[46] *Id*.

20

high performers rather than scrutinizing them more closely to determine whether some performed

at a higher level than others; (2) Sanders failed to review "any documents"; (3) Sanders did not

consult the immediate supervisor of the MACs Project Managers; and (4) Defendant allowed

Sanders to use his own approach as long as he could articulate his criteria.  Even these assertions

highlight the fact that Sanders did have criteria in choosing to eliminate Plaintiff's position.

Indeed the record indicates that Sanders considered objective factors like each employee's salary

and whether the employee had achieved a job-related certification.  More importantly, even if

accepted as true, none of these facts remotely suggest that Sanders impermissibly took Plaintiff's

age into account in making his decision.  Therefore, this evidence does not support the fourth

element of Plaintiff's prima facie case.

### D.    *Defendant's Differing Explanations for Plaintiff's Termination*

Finally, Plaintiff contends that Defendant has provided different rationales at different

times for its decision to eliminate Plaintiff's job, further evidence of discriminatory animus.  The

Sixth Circuit has held that shifting rationales may be evidence of pretext; however, the Sixth

Circuit has never held that such inconsistency is additional evidence of discriminatory intent for

purposes of the prima facie case.[47]  Rather the Sixth Circuit explicitly rejected an ADEA

plaintiff's attempt to use evidence of pretext to satisfy his burden to produce additional evidence

in the RIF context because an employer's inconsistent explanation "simply does not show age

discrimination."[48]  In this case, Plaintiff has failed to prove that Sanders, the actual decision-

maker in this case, proffered inconsistent reasons for Plaintiff's termination.  Even if Sanders

---

[47] *Cicero v. Borg-Warner Auto., Inc.,* 280 F.3d 579, 592 (6th Cir.2002).

[48] *Schoonmaker*, 595 F.3d at 268.

had, then this would more properly be considered evidence of pretext, and not the kind of additional evidence required to make out a prima facie showing of discrimination in a RIF case. Thus, the Court holds that this evidence does not satisfy Plaintiff's burden to adduce additional evidence.

Based on these holdings, the Court concludes that Plaintiff cannot make out his prima facie case of age discrimination due to the fact that Plaintiff has failed to adduce additional evidence that age motivated Defendant's decision to terminate him.

## III.   Pretext

Even if Plaintiff could make out his prima facie case of age discrimination, the parties do not dispute that Defendant has proffered legitimate, non-discriminatory reasons for its decision to terminate Plaintiff.  Defendant has stated that Plaintiff's position was selected for elimination as part of the reduction in force for three reasons: (1) Plaintiff had the highest salary among MACs Project Managers; (2) Plaintiff lacked the job-specific certification possessed by all other MACs Project Managers; and (3) Plaintiff did not have the desired experience in the mortgage-side of Defendant's business.

The Court holds that even if Plaintiff had establish the elements of his prima facie case, Plaintiff has failed to show that Defendant's legitimate reasons were pretext for improper age discrimination.  In order to show pretext, Plaintiff is required to prove (1) that the proffered reasons had no basis in fact; (2) that the proffered reasons did not actually motivate his termination; or (3) that they were insufficient to motivate his termination.[49]  Plaintiff does not brief any of these factors directly.  Based on his response brief, it appears that Plaintiff argues

---

[49] *Gray v. Toshiba America Consumer Prods., Inc.,* 263 F.3d 595, 600 (6th Cir.2001).

that none of Defendant's proffered reasons were based in fact or actually motivated his termination.

First, Plaintiff argues that his salary was not an actual consideration because Defendant's stated purpose for the RIF was to reduce the number of employees, not payroll.  The Court rejects this distinction because it is undisputed that Defendant undertook the RIF in this instance in order to reduce costs.  Arguably the most significant factor in costs is employee salary, whether it is one employee or many.  Plaintiff does not otherwise dispute that he was the highest paid MACs Project Manager, and so therefore Defendant's consideration of this fact does not suggest pretext for age discrimination.

Second, while Plaintiff does not dispute that he lacked the PMP certification, he contends that the certification had never been a job requirement.  Defendant concedes this fact and even admits that "[a]bsent the RIF, Plaintiff's lack of PMP certification would not have caused his termination."[50]  Nevertheless, the record indicates that Sanders considered this factor only to distinguish employees who were equal in other respects.  Plaintiff has not come forward with any other evidence to suggest that his lack of certification did not actually motivate the selection of his position for elimination.  Therefore, the Court finds that Plaintiff has not shown that Defendant's use of this factor was pretextual.

Third, Plaintiff actually argues that Defendant's claim that he lacked sufficient experience with mortgage-related projects had no basis in fact.  Plaintiff has adduced evidence that he did have significant experience with mortgage projects.  In fact, nearly all of his projects in 2006 and 2007 were mortgage related.  Defendant does not dispute Plaintiff's assertion other than to state

---

[50] Def.'s Reply (D.E.# 18), 13.

that as an employee in the Memphis location, Plaintiff was not required to work as consistently on mortgage projects as employees in Defendant's Dallas location.  Consequently, Defendant had more background in banking operations than in mortgages as compared to other MACs Project Managers.  Although the Court finds that this proffered reason is weaker than the other reasons cited for Sanders' decision, Plaintiff has not shown that he had the same amount of mortgage experience as other MACs Project Managers.  Therefore, this evidence does not establish that Defendant's proffered reason had no basis in fact and might therefore be proof of pretext.

Had the Court held that Plaintiff could make out his prima facie case of age discrimination, Plaintiff would still not be able to prove that Defendant's legitimate, proffered reasons were pretext for discrimination.  Plaintiff has come forward with no proof that the Defendant's stated reasons had no basis in fact or did not actually motivate Defendant's decision to eliminate his job.

## **CONCLUSION**

Having held that Plaintiff's is a reduction in force case, the Court holds that Plaintiff has failed to make out a prima facie case of age discrimination.  More specifically, Plaintiff cannot adduce additional direct, circumstantial, or statistical evidence that Defendant based its decision to terminate Plaintiff's employment on an improper motive.  Even if Plaintiff had made this showing, the Court holds that Plaintiff cannot establish that Defendant's legitimate, non-discriminatory reasons are pretext for age discrimination.  Therefore, Defendant's Motion for Summary Judgment is **GRANTED**.

**IT IS SO ORDERED.**

**s/ S. Thomas Anderson**
S. THOMAS ANDERSON
UNITED STATES DISTRICT JUDGE

Date: June 9th, 2010.